**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAHEEM JONES,<br><br>Petitioner,<br><br>v.<br><br>BRUCE DAVIS, *et al.*,<br><br>Respondents. | No. 23cv2881 (EP)<br><br>**OPINION** |

**PADIN, District Judge.**

*Pro se* Petitioner Raheem Jones, a prisoner at New Jersey State Prison, seeks a writ of habeas corpus under 28 U.S.C. § 2254 vacating his state court conviction. D.E. 1 ("Petition" or "Pet."). Respondents Bruce Davis and the Attorney General of the State of New Jersey oppose the Petition. D.E. 9 ("Answer"). Jones filed a reply brief. D.E. 12 ("Reply"). The Court decides the Petition without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

For the reasons below, the Petition is **DISMISSED in part** and **DENIED in part**, and the Court **DENIES** a certificate of appealability.

## I. BACKGROUND

### A. The Crime

On December 12, 2012, Jones had been dating L.S., the victim, for ten to twelve years, and frequently stayed with L.S. and her daughter, S.S. D.E. 9-11, *State v. Jones*, No. A-5394-15 (App. Div. Dec. 14, 2018) (slip op.) ("*Jones I*") at 5.[1] On that date, S.S. left her daughter, M.S., in the care of her grandmother, L.S. *Id.* When S.S. returned home that evening, M.S. was crying in the

[1] Page citations refer to the original page numbers on the cited exhibit.

hallway and said, "[m]y papa killed my grandmother." *Id.* M.S. was known to call Jones "Papa." *Id.* S.S. ran upstairs and found her mother in a pool of blood. *Id.* S.S. called 9-1-1 with her cellphone, and the jury ultimately heard a recording of that call. *Id.*

It was later discovered that the victim had called 9-1-1 on her cellphone shortly before S.S. arrived to find her dead. *Id.* at 6. In the recording of that call, later played to the jury, the victim said, "I was stabbed to death. My boyfriend stabbed me …[a]ll over my body." *Id.* When Joseph Taylor learned his cousin, L.S., had been injured, he called her cell phone. *Id.* According to Taylor's testimony at trial, Jones answered and quickly hung up. *Id.* L.S.'s cellphone was never found. *Id.* at 5. When Taylor went to the hospital, he learned L.S. had died. *Id.* at 6. Jones never appeared at the hospital. *Id.*

Jones's uncle testified that Jones called him the evening of the murder and said he had just stabbed his girlfriend when he caught her on the phone talking to another man. *Id.* Bashon Hardy, Jones's cousin, testified that Jones appeared at his back door later that evening with blood on his clothes and appeared distraught. *Id.* Jones told Hardy, "I think I f****d up. I think I killed my girl." *Id.*

When DNA testing was performed on blood collected from under the victim's fingernails, Jones was identified as a source, but other male relatives with similar DNA profiles could not be completely ruled out. *Id.* The victim's autopsy established that she was stabbed eleven times with various kitchen knives, causing severe lacerations to her neck, chest, back, and left hand. *Id.* The broken blade of a knife was lodged in the victim's neck. *Id.*

**B. The Charges, Conviction, and Sentence**

On May 21, 2013, a grand jury returned Indictment No. 13-05-0503, charging Jones in the Superior Court of New Jersey, Passaic County, with first-degree murder resulting in the death of

L.S., in violation of N.J. Stat. Ann. §§ 2C:11-3(a)(1) and 2C:11-3(a)(2), and weapons charges in violation of N.J. Stat. Ann. §§ 2C:39-4(d) and 2C:39-5(d). D.E. 9-3 ("Indictment").

Approximately two months before trial, on July 30, 2015, the Honorable Miguel A. de la Carrera held a hearing under N.J.R.E. 104(a), at which the State proffered evidence it intended to introduce at trial. *Jones I* at 7. Judge de la Carrera ruled three-year-old M.S.'s statement to a responding police officer, Patrolman Daniel Loffio, that "Poppy killed Grandma" was admissible as an excited utterance under N.J.R.E. 803(c)(2). *Id.* At a later pretrial hearing, the State called Loffio, who testified about the circumstances surrounding M.S.'s statement. *Id.* Judge de la Carrera again ruled M.S.'s statement was admissible, and Loffio testified before the jury about her statement. *Id.* Jones did not testify or call any witnesses. *Id.* at 6.[2]

The jury found Jones guilty of all charges. D.E. 9-32 ("Jury Verdict") at 8–11. On January 8, 2016, Judge de la Carrera sentenced Jones to a term of life imprisonment with an 85% period of parole ineligibility pursuant to the No Early Release Act ("NERA"), N.J. Stat. Ann. § 2C:43-7.2, and granted the State's motion for a discretionary extended term. D.E. 9-4 ("Judgment of Conviction" or "JOC"); D.E. 9-5 ("Amended JOC").

### C. Direct Appeal Proceedings

On August 16, 2016, Jones filed a direct appeal in the Appellate Division. D.E. 9-6 ("Direct Appeal Brief"). In his counseled brief, Jones asserted four claims: (1) the trial court erred by admitting evidence of his prior assault of L.S.; (2) even if admissible, the court's limiting instruction was inadequate; (3) the prosecutor's summation was improper; and (4) his extended-

[2] The Court defers to the state courts' factual determinations pursuant to 28 U.S.C. § 2254(e)(1) and adopts the facts as set forth by the Appellate Division in its direct appeal and collateral review opinions, which are the highest-level state court decisions containing a reasoned decision on Jones's federal constitutional claims. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (discussing application of § 2254 standard of review).

term sentence was procedurally defective and excessive. *Id.* at 1–42. Jones also raised two claims in his *pro se* supplemental brief on direct appeal. D.E. 9-8 at 3–14 ("*Pro se* Direct Appeal Brief").[3] He alleged that Patrolman Loffio's testimony repeating M.S.'s statement violated the Confrontation Clause under *Crawford v. Washington*, 541 U.S. 36 (2004), and that the court violated his due process rights by allowing the testimony of Bashon Hardy and Joseph Taylor. *Id.* at 3–14.

The Appellate Division rejected Jones's challenges to his conviction but remanded for resentencing because, "[t]o the extent the JOC can be read as having imposed two sentences, it must be corrected." *Jones I* at 20. The New Jersey Supreme Court denied certification. D.E. 9-15; *State v. Jones*, 238 N.J. 426 (2019). On remand, Judge de la Carrera imposed a life sentence subject to NERA, including an 85% period of parole ineligibility and five years of parole supervision; the State withdrew its extended-term application. Amended JOC.

**D. Collateral Review Proceedings**

On or about July 2, 2019, Jones filed a *pro se* petition for post-conviction relief ("PCR") and a request for appointment of PCR counsel. D.E. 9-16 at Da043–064 ("PCR Petition"). Craig S. Leeds, Esq. was appointed as PCR counsel and filed a brief in support of the PCR Petition. D.E. 9-16 at Da065–Da144 ("PCR Brief"). PCR counsel raised eight claims, with subparts, which included ineffective assistance of trial counsel during pretrial investigation and plea negotiations, denial of the right to present an alibi and third-party guilt defense, denial of the constitutional right to testify, and cumulative error. *Id.* at Da084–Da141. On July 7, 2020, Judge de la Carrera denied Jones's PCR Petition without an evidentiary hearing. D.E. 9-16 at Da145 ("PCR Court Order"); D.E. 9-35 ("PCR Hrg. Tr.").

---

[3] The page citations to the *Pro se* Direct Appeal Brief are the page numbers assigned by the Court's Case Management Electronic Case Filing system, CM/ECF.

On July 13, 2021, Jones filed a notice of PCR appeal. D.E. 9-16 at Da146–Da149. Andrew R. Burroughs, Esq. represented Jones on PCR appeal and raised four claims: (1) trial counsel's ineffective assistance led Jones to reject the State's plea offer; (2) Jones made a prima facie case for alibi and third-party-guilt defenses; (3) Jones was denied his constitutional right to testify; and (4) trial counsel's cumulative errors denied him effective assistance of counsel. D.E. 9-16 at 1–25 ("PCR Appeal Brief"). On October 14, 2022, the Appellate Division affirmed the denial of PCR. *State v. Jones*, No. A-3213-20 (App. Div. Oct. 14, 2022) (slip op.), D.E. 9-19 ("*Jones II*"). The New Jersey Supreme Court denied certification. D.E. 9-23.

**E. Federal Court Proceedings**

Jones filed this Petition on May 25, 2023. Pet. He initially raised twelve grounds for relief, but the Court dismissed Ground Twelve upon screening the Petition. D.E. 3 ("June 30, 2023 Order"). The remaining eleven grounds for relief are as follows:

> GROUND ONE: Because the jury heard inadmissible and highly prejudicial evidence that Raheem Jones punched his girlfriend and broke her nose on a prior occasion, Raheem was denied his right to a fair trial.
>
> GROUND TWO: Even if this Court finds that the Other-Crime evidence was admissible, the trial court's failure to instruct the jury on the limited use of the evidence and failure to relate the Other-Crime evidence to the facts of the case denied Raheem a fair trial.
>
> GROUND THREE: The prosecutor's highly prejudicial emotional appeals to the jury in summation were improper and require reversal.
>
> GROUND FOUR: Raheem's discretionary extended-term sentence should be vacated and reduced because it was procedurally defective and manifestly excessive.
>
> GROUND FIVE: The testimony by Patrolman Daniel Loffio as to the declaration made by the non-testifying three-year-old [M.S.] violated *Crawford v. Washington*, for that the declaration was testimonial, [M.S.] was not unavailable to testify and there was no prior opportunity for the defense to cross-examine her.

> GROUND SIX: The Court violated Defendant's Fifth, Sixth and Fourteenth Amendment Rights of Due Process for Allowing Fraudulent testimony by two key witnesses for the State, Bashon Hardy and Joseph Taylor.
>
> GROUND SEVEN: Trial Counsel's ineffective representation during the pretrial process impacted the plea process causing Defendant substantial prejudice.
>
> GROUND EIGHT: The Defendant was deprived his constitutional right to present a defense.
>
> GROUND NINE: The Defendant was deprived his constitutional right to testify on his own behalf.
>
> GROUND TEN: The testimony by Patrolman Daniel Loffio as to the Declaration made by the non-testifying three year old [M.S.] violated *Crawford v. Washington*, for that the declaration was testimonial, [M.S.] was not unavailable to testify and there was no prior opportunity for the defense to cross examine her.
>
> GROUND ELEVEN: Failure to comply with the strictures of Rule 3:9-1(F) and 3:9-1(G) violated Petitioner's right to due process.

Pet. at 21–30.

Respondents filed an answer to the Petition on December 7, 2023. Answer. Jones filed a reply brief on April 16, 2024. Reply. The Petition is ready for disposition.

## II. LEGAL STANDARD

"The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." *Shoop v. Hill*, 586 U.S. 45, 48 (2019). A federal court may entertain a petition for a writ of habeas corpus on behalf of a person in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

"[B]efore a federal court may consider the merits of a § 2254 habeas petition, an inmate ordinarily must exhaust the state-court remedies for the claimed violation of federal law." *Ross v. Adm'r E. Jersey State Prison*, 118 F.4th 553, 562 (3d Cir. 2024) (citation modified); 28 U.S.C. § 2254(b)(1)(A)–(B). To exhaust available state court remedies, a habeas petitioner must fairly present the "factual and legal substance" of his claim to the state courts "in a manner that puts them on notice that a federal claim is being asserted." *Id.* at 564 (citation modified). Exhaustion further requires the habeas petitioner to present all claims to the trial court, the intermediate appellate court, and the state supreme court. *Id.*

An unexhausted claim may be deemed exhausted when the habeas petitioner no longer has a right under state law to litigate the claim in the state courts, *i.e.*, when the claim is time-barred. *Id.* "When a habeas claim is deemed exhausted because of the unavailability of additional state-court review, the claim may still be subject to dismissal on procedural-default grounds." *Id.* at 565 (citation modified). A claim is procedurally defaulted "when a state-court rule of procedure prevents additional consideration of the claim in state court on grounds that are both adequate for the court's decision and independent of the merits of the federal claim, such as when a claim has been waived or is time-barred." *Id.* (citation modified).

A habeas petitioner may overcome procedural default by showing "cause for the default and actual prejudice as a result of the underlying violation of federal law." *Id.* (citation modified). Procedural default may also be excused by "actual innocence" where the petitioner presents "new, reliable evidence showing it is more likely than not that no reasonable juror would have voted to convict him." *Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018).

When evaluating the merits of a habeas claim, relief shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where the last state court to decide a petitioner's federal claim did not explain its decision on the merits in a reasoned opinion, a habeas court must "look through the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson*, 584 U.S. at 125. The habeas court should "presume that the unexplained decision adopted the same reasoning." *Id.* "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision[.]" *Id.* at 125–26.

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "[A] state-court decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). "This means that a state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement.'" *Shoop*, 586 U.S. at 48 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The Court must presume that the state court's factual findings are correct, unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

To obtain relief under § 2254(d)(1), a petitioner must show that "no fairminded jurist could have reached the same judgment as the state court." *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (citation modified). And even when a petitioner satisfies AEDPA, he must also show that the constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see Brown v. Davenport*, 596 U.S. 118, 122 (2022).

## III. DISCUSSION

### A. The Appellate Division Reasonably Rejected Jones's Due Process Challenges to the Other-Crimes Evidence and Limiting Instruction (Grounds One and Two)

In Grounds One and Two, Jones argues that the trial court erred and violated his due process right to a fair trial by admitting evidence that he assaulted L.S. on a prior occasion, and that even if the evidence was admissible, the court's limiting instruction was inadequate. Pet. at 21–23. Jones recognizes that the trial court admitted evidence that he punched the victim and broke her nose on a prior occasion to establish his jealousy and possessiveness as motive and intent for stabbing her. *Id.* at 21. When the trial testimony of the prior bad act failed to support jealousy and possessiveness as motive and intent for the crime charged, Jones argues the trial court should have stricken the testimony as irrelevant and highly prejudicial. *Id.* Jones further contends that the limiting instruction was inadequate because it did not explain the specific purpose for which the evidence was admitted and how the prior crime related to the facts of this case. *Id.* at 23. Respondents argue that admission of this evidence is a matter of state evidentiary law that does not warrant habeas relief, and that any error was harmless in light of the overwhelming evidence of Jones's guilt. Answer at 18–26.

A federal habeas court may not grant relief merely because a state court misapplied its evidence rules. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 72 (1991). But clearly established federal law also recognizes that "when evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Andrew v. White*, 604 U.S. 86, 91 (2025) (quoting *Payne v. Tennessee*, 501 U.S. 808, 825 (1991)). Relevant considerations include the evidence's relevance, its prejudicial force, and any mitigating instructions. *Id.* at 94. A challenged instruction separately warrants relief only if, viewed in the context of the charge and the trial, it "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Grounds One and Two present cognizable federal due process claims, so the Court addresses them under AEDPA.

*1. Admission of the Other-Crimes Evidence*

In a N.J.R.E. 104(a) hearing prior to trial, the State sought a ruling on the introduction of Jones's prior assault of L.S. D.E. 9-25, Ex. 23 ("July 30, 2015 Trial Tr.") at 68:3–100:15. Applying *State v. Cofield*, 127 N.J. 328 (1992),[4] Judge de la Carrera ruled the evidence was admissible because Jones's prior jealousy and possessiveness tended to prove his motive and

[4] In *Cofield*, the New Jersey Supreme Court discerned:

> a rule of general application in order to avoid the over-use of extrinsic evidence of other crimes or wrongs: 1. The evidence of the other crime must be admissible as relevant to a material issue; 2. It must be similar in kind and reasonably close in time to the offense charged; 3. The evidence of the other crime must be clear and convincing; and 4. The probative value of the evidence must not be outweighed by its apparent prejudice.

127 N.J. at 338 (citation modified).

intent. D.E. 9-26, Ex. 24 ("Aug. 12, 2015 Hrg. Tr.") at 5:23–11:15. At trial, the prosecutor presented a sanitized version of the prior assault through S.S.'s testimony:

> Q: Specifically I want to direct your attention to October 20th of 2002. Do you remember back then?
>
> A: Not really.
>
> Q: Do you remember an incident where your mother had a broken nose?
>
> A: Yes.
>
> Q: And she had to go to the hospital for that broken nose?
>
> A: Yes.
>
> Q: Do you remember how she got that broken nose?
>
> A: Yes.
>
> Q: Can you tell us how she got that — just tell us how she got that broken nose?
>
> A: Raheem punched her in her nose.
>
> Q: And that's Raheem, the defendant here?
>
> A: Yes.
>
> Q: And that's the same person you had been talking about during your testimony this afternoon?
>
> A: Yes.

D.E. 9-30, Ex. 28 ("Oct. 1, 2015 Trial Tr.") at 112:12–113:6.

The Appellate Division found the pretrial ruling "entirely sound" based on the State's proffer that earlier domestic violence reflected Jones's jealousy and possessiveness. *Jones I* at 11–12. But the evidence actually presented at trial—the bare fact that Jones broke L.S.'s nose about ten years earlier—"lacked any probative value as to motive, intent or other permissible use," and

the trial judge should have reconsidered the ruling. *Id.* at 12–13. Because Jones did not object to the sanitized testimony, the Appellate Division reviewed for plain error and concluded that, "[i]n light of the substantial evidence of defendant's guilt," the brief testimony was not "clearly capable of producing an unjust result." *Id.* at 13 (quoting R. 2:10-2).

*2. The limiting instruction*

Immediately after S.S.'s testimony that Jones broke L.S.'s nose ten years ago, the trial judge gave the jury a limiting instruction:

> The State is seeking to introduce evidence that defendant previously assaulted [L.S.]. Normally such evidence is not permitted under the Rules of Evidence. The rules specifically exclude evidence that a defendant has committed another crime or wrong or bad act when it's offered only to show that he has a disposition or tendency to do wrong, and therefore must be guilty of the charged offense. Before you can give any weight to this evidence you must be satisfied that the defendant committed the other act of domestic violence. If you are not so satisfied you may not consider it for any purpose.
>
> Our rules do, however, permit evidence of another crime or wrong or bad act when the evidence is used for certain specific narrow purposes. In this case[,] the State is seeking to introduce evidence that the defendant acted violently towards the victim, herein, [L.S.], on a prior occasion. It seeks to do so in order to establish motive, intent, identity, or absence of mistake or accident with regard to the charged murder in this case.
>
> Whether this evidence does, in fact, demonstrate defendant's motive, intent, identity, or absence of mistake is for you to decide. You may decide that the evidence does not demonstrate motive, intent, identity, or absence of mistake is not helpful to you at all. In that case you must disregard the evidence.
>
> On the other hand, you may decide that that evidence does demonstrate motive, intent, identity or absence of mistake, and use it for that specific purpose. You may not, however, use this evidence to decide that the defendant has a tendency to commit crimes or that he is a bad person. That is[,] you may not decide that just because the defendant has committed the previous bad act that he must be guilty of the present crimes. Any evidence that's admitted in this regard will be admitted only to help you decide the specific questions of motive, intent, identity, or absence of mistake. You may not consider it for any other purpose and may not find the defendant guilty now simply because the State has offered evidence that he committed a previous bad act.

*Jones I* at 12–13; Oct. 1, 2015 Trial Tr. at 113:10 to 115:5.

The trial judge repeated these instructions nearly verbatim in his final jury charge. D.E. 9-32, Ex. 30 ("Oct. 7, 2015 Trial Tr.") at 77:5–79:2. The Appellate Division found the charge could have been more specifically tailored to the permissible uses of the evidence, but "given the limited nature of the testimony and the strength of the State's case, the flawed charge does not 'raise reasonable doubt about the reliability of defendant's conviction.'" *Jones I* at 14.

The Appellate Division's decision was not an unreasonable application of the governing due process principles. The challenged evidence was weakly probative at best, as the Appellate Division itself recognized. But it was also brief: the jury heard only that Jones had punched L.S. and broken her nose about ten years earlier. The court immediately instructed the jury that it could not use the evidence to infer criminal propensity or bad character and must disregard it unless it bore on a listed, permissible purpose. Oct. 1, 2015 Trial Tr. at 113:10–115:5. The court repeated that instruction in the final charge. Oct. 7, 2015 Trial Tr. at 77:5–79:2. Jurors are presumed to follow limiting instructions. *Samia v. United States*, 599 U.S. 635, 646 (2023).

Considering the evidence's limited presentation, the anti-propensity instructions, and the trial record as a whole, fairminded jurists could agree that the error did not render the trial fundamentally unfair. *See Andrew*, 604 U.S. at 94. The State presented substantial independent evidence: L.S. identified her "boyfriend" as the attacker during her 9-1-1 call; Jones was her boyfriend; a DNA profile recovered from beneath her fingernails was consistent with Jones; M.S. immediately identified "Papa" as the killer; relatives testified that Jones admitted stabbing his girlfriend; and Hardy testified that Jones arrived that night with blood on his clothes. *Jones I* at 5–6. For the same reasons, any constitutional error did not have a substantial and injurious effect on the verdict. *See Brecht*, 507 U.S. at 637. The Court will **DENY** Grounds One and Two.

**B. The Appellate Division Reasonably Rejected Jones's Prosecutorial-Misconduct Claim (Ground Three)**

In Ground Three, Jones argues that the prosecutor's summation was so improper that it deprived him of due process. Pet. at 23–24. He challenges the prosecutor's physical demonstration of the stabbing; emotional references to the effect of the crime on S.S.; favorable references to the victim; references to God drawn from the victim's 9-1-1 call; and replaying the 9-1-1 recordings during summation. *Id.* Respondents contend that the summation was forceful but fair and remained tied to the evidence. Answer at 26–29. In reply, Jones argues that the cumulative effect of the demonstration, replayed recordings, favorable references to the victim, and emphasis on the impact on S.S. unfairly prejudiced him. Reply at 15–18.

A prosecutor's misconduct will not be held to violate the Constitution unless it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). This is a "highly generalized standard," and the "threshold is a demanding one." *Id.* at 45–47. Even if a reviewing court finds that a prosecutor engaged in misconduct, the relevant question is not whether the misconduct was improper, but rather, "whether such conduct infected the trial with such unfairness as to make the conviction a denial of due process." *Darden*, 477 U.S. at 181.

The Appellate Division agreed with the trial judge's assessment that the prosecutor's summation was proper. *Jones I* at 16–17. Defense counsel objected at the close of summation to the prosecutor's references to emotion and God; the trial judge overruled the objection, specifically finding that the prosecutor's comments "did not inject[] any emotion into [the case] that wasn't already there" and that the God references were drawn directly from the victim's own words during her 9-1-1 call. Oct. 7, 2015 Trial Tr. at 45:5–48:11. The Appellate Division reviewed the totality

of the summation and found it "firmly tethered to the evidence in the case, which rebutted the defense contention that another man was L.S.'s assailant." *Jones I* at 17.

None of the challenged remarks, considered individually or cumulatively, crossed *Darden*'s demanding threshold. The physical demonstration addressed the force and proximity involved in the eleven stab wounds and thus the State's theory of purposeful or knowing murder. Oct. 7, 2015 Trial Tr. at 27:22–30:10. Replaying the 9-1-1 calls highlighted evidence already admitted and responded to the defense theory that someone other than Jones was the "boyfriend" whom L.S. identified. *Id.* at 33:10–33:12. The references to God repeated words from L.S.'s call rather than invoking religion as an independent reason to convict. *Id.* at 46:6–21. And the prosecutor's discussion of S.S.'s reaction to her mother's death was offered to explain her demeanor and credibility. *Id.* at 46:22–47:9. The Appellate Division could therefore reasonably conclude that the summation remained tied to the evidence and the disputed issues.

The Supreme Court explained the purpose of summation in a criminal trial:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries' positions.

Closing argument permits counsel to marshal admitted evidence and argue reasonable inferences from it. *Herring v. New York*, 422 U.S. 853, 862 (1975). The prosecutor did so here. The fact that the evidence and the permissible inferences were emotionally powerful did not, without more, make the summation constitutionally unfair.

Jones therefore has not shown that the Appellate Division's decision was contrary to, or an unreasonable application of, *Parker* and *Darden*. The Court will **DENY** Ground Three.

### C. Jones's Extended-Term Challenge Is Moot, and His Eighth Amendment Challenge Fails on the Merits (Ground Four)

In Ground Four, Jones challenges his original discretionary extended-term sentence as procedurally defective and his life sentence with a parole disqualifier as manifestly excessive in violation of the Eighth Amendment. Pet. at 24.

Jones's challenge to the discretionary extended term is moot. The Appellate Division remanded because the original judgment could be read as imposing both an ordinary life term and an extended life term. *Jones I* at 17–20. On remand, the State withdrew the extended-term application, and the trial court imposed a life sentence subject to NERA, including an 85% period of parole ineligibility and five years of parole supervision. Amended JOC. Because Jones no longer is serving the extended-term sentence he challenges, the Court will **DISMISS** that portion of Ground Four as **MOOT**. *See Arave v. Hoffman*, 552 U.S. 117, 118 (2008).

Jones also contends that the life sentence imposed on remand is grossly disproportionate under the Eighth Amendment. That claim was not exhausted, but the Court may deny an unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2). The Eighth Amendment's "narrow proportionality principle" forbids only sentences that are grossly disproportionate to the offense, and successful challenges to prison terms are "exceedingly rare." *Ewing v. California*, 538 U.S. 11, 20–21 (2003) (citation modified). A court proceeds to comparisons with sentences for other crimes or in other jurisdictions only if the threshold comparison between the offense and sentence creates an inference of gross disproportionality. *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J., concurring in part and concurring in the judgment). No such inference arises here. Jones was convicted of murdering L.S. by stabbing her eleven times, and his sentence permits parole consideration after the NERA ineligibility period. A life sentence for an adult convicted of

murder is not grossly disproportionate. The Court will **DENY** the Eighth Amendment portion of Ground Four.

### D. The Appellate Division Reasonably Rejected Jones's Confrontation Clause Claim (Grounds Five and Ten)

In Grounds Five and Ten, Jones argues that Patrolman Loffio's trial testimony, in which he repeated M.S.'s statement, "Poppy killed Grandma," violated the Confrontation Clause of the Sixth Amendment under *Crawford v. Washington*, 541 U.S. 36 (2004). Pet. at 25, 29–30. Jones contends M.S.'s statement was testimonial and that there was no prior opportunity to cross-examine her. *Id.* Respondents argue M.S.'s statement was nontestimonial and, therefore, not subject to the Confrontation Clause. Answer at 34–37. Ground Ten is identical to Ground Five, and the Court addresses them together.

The Confrontation Clause bars the admission of testimonial statements by a witness who does not appear at trial, unless the witness was unavailable and the defendant had a prior opportunity to cross-examine. *Crawford*, 541 U.S. at 58–59. The Supreme Court clarified the distinction between testimonial and nontestimonial statements in *Davis v. Washington*, 547 U.S. 813 (2006):

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822. The "primary purpose" inquiry considers all the circumstances objectively and asks whether the conversation was principally designed to create an out-of-court substitute for trial testimony. *Ohio v. Clark*, 576 U.S. 237, 245 (2015). A declarant's age matters: statements by very young children "will rarely, if ever, implicate the Confrontation Clause." *Id.* at 247–48.

The Appellate Division rejected the *Crawford* claim, finding that M.S.'s spontaneous statement to Officer Loffio at the crime scene—made while responding officers were attending to the victim's injuries—was nontestimonial and properly admitted as an excited utterance. *Jones I* at 14–15. The court relied on *State v. Buda*, 195 N.J. 278, 304 (2008), which held that a three-year-old's spontaneous, unprompted statement after an assault was nontestimonial because "spontaneous statements do not bear the indicia of 'a formal statement to government officers' but instead are akin 'to a casual remark to an acquaintance.'" *Id.* (quoting *Crawford*, 541 U.S. at 51).

That conclusion was reasonable. Three-year-old M.S. made the brief statement spontaneously at the scene, while officers were responding to a recent stabbing and attending to L.S. Nothing suggests that Loffio conducted a structured interview or that M.S. spoke to create evidence for a later prosecution. And given her age, it is especially unlikely that she understood her statement as a substitute for trial testimony. *See Clark*, 576 U.S. at 247–48. Objectively viewed, the statement's primary purpose was to identify what happened during an unfolding emergency, not to preserve testimony. The Court will **DENY** Grounds Five and Ten.

### E. Ground Six Does Not Warrant Habeas Relief

In Ground Six, Jones claims that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights by allowing "fraudulent" testimony from Bashon Hardy[5] and Joseph Taylor[6] (the "Hardy subclaim" and the "Taylor subclaim"). Pet. at 26. Jones contends Hardy fabricated the story that Jones, covered in blood, visited his home on the night of the murder and confessed

[5] As detailed above in Section I.A, Hardy—Jones's cousin—testified that Jones appeared at his back door later that evening with blood on his clothes and appeared distraught. *Jones I* at 6. Jones told Hardy, "I think I f****d up. I think I killed my girl." *Id.*

[6] As detailed above in Section I.A, when Taylor learned his cousin, L.S., had been injured, he called her cell phone. Slip Op. at 6. According to Taylor's testimony at trial, Jones answered and quickly hung up. *Id.* L.S.'s cellphone was never found. *Id.* at 5.

to stabbing his girlfriend and fearing she was dead. *Id.* at 26–27. He asserts the State knew Hardy's testimony was fabricated because Hardy had not disclosed this in his prior statements. *Id.* at 27. Jones did not allege how Taylor's testimony violated due process. *Id.* at 26–27.

Respondents argue that Jones's allegations concerning Hardy are unsupported by the record because Jones alleged omissions in Hardy's testimony, and these omissions were the subject of cross-examination to impeach his credibility. Answer at 37–38. Respondents assert that the Taylor sub-claim is procedurally defaulted because Jones submitted no substantive legal argument regarding Taylor's testimony to the state courts, which found the claim waived. Answer at 39.

The due process right to a fair trial is violated if the prosecution knowingly uses perjured testimony and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Napue v. Illinois*, 360 U.S. 264, 271 (1959). To prevail on such a claim, a petitioner must show that: (1) the witness committed perjury; (2) the government knew or should have known of the perjury; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony affected the verdict. *Lambert v. Blackwell*, 387 F.3d 210, 242–43 (3d Cir. 2004).

As to Hardy, the Appellate Division concluded that Jones had confused impeachment with the substantive use of a prior inconsistent statement under *State v. Gross*, 121 N.J. 1 (1990). *Jones I* at 14–15. Hardy's prior omissions and inconsistencies were available for impeachment, and defense counsel cross-examined him at length. D.E. 9-29, Ex. 27 ("Sept. 30, 2015 Trial Tr.") at 107:2–145:19. An omission or inconsistency does not, without more, establish perjury, and Jones offers no evidence that Hardy knowingly testified falsely, that the prosecutor knew of false testimony and allowed it to stand, or that Hardy's testimony affected the verdict. The Hardy theory therefore fails under *Napue*.

As to Taylor, Jones does not identify any particular statement that was false, explain why it was false, or offer evidence that the prosecutor knew it was false. His bare characterization of Taylor's testimony as "fraudulent" therefore fails to state a *Napue* claim. See *Lambert*, 387 F.3d at 242–43. Even if this theory was not exhausted, the Court may deny it on the merits. 28 U.S.C. § 2254(b)(2). Because both the Hardy and Taylor theories fail on the merits, the Court need not decide whether the Appellate Division's briefing-waiver ruling would independently bar federal review. The Court will **DENY** Ground Six.

### F. The Appellate Division Reasonably Rejected Jones's Plea-Advice Claim (Ground Seven)

In Ground Seven, Jones claims that counsel incorrectly advised him that his maximum parole-ineligibility period was thirty years, preventing him from fairly evaluating the State's forty-five-year NERA offer. Pet. at 27; Reply at 9–14. He asserts that, had counsel accurately advised him of his exposure to life imprisonment and a substantially longer parole bar, he would have accepted the offer. *Id.* Respondents argue that the signed pretrial memorandum and the pretrial record establish that Jones knew his maximum exposure before rejecting the offer. Answer at 42–46.

The Sixth Amendment right to effective assistance extends to plea negotiations. *Missouri v. Frye*, 566 U.S. 134, 143 (2012). To establish prejudice from the rejection of a plea offer, a defendant must show a reasonable probability that, but for counsel's deficient advice, he would have accepted the offer; the prosecution would not have withdrawn it; the court would have accepted it; and the conviction or sentence under the offer would have been less severe. *Lafler v. Cooper*, 566 U.S. 156, 163–64, 174 (2012); *Frye*, 566 U.S. at 147. Both deficient performance and prejudice remain required. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The Appellate Division reasonably rejected the factual premise of Jones's claim. The pretrial memorandum—signed by Jones, defense counsel, the prosecutor, and the trial judge—listed his maximum exposure as life imprisonment subject to NERA, with a minimum parole-ineligibility period of sixty-six and one-half years. *Jones II* at 5–6. It also memorialized the State's offer of forty-five years subject to NERA. *Id.* at 6. The Appellate Division therefore concluded that Jones was "fully aware of the penal consequences of going to trial versus accepting the State's plea offer." *Id.* at 6–7. Jones offered no verified submission or other evidence that counsel gave materially different advice despite the signed memorandum. *Id.* at 5.

The Appellate Division also relied on Jones's simultaneous assertion of alibi and third-party-guilt defenses. *Jones II* at 7. A defendant's assertion of innocence may bear on whether he would have accepted a plea, but it is not categorically dispositive. *See Baker v. United States*, 109 F.4th 187, 201–03 (3d Cir. 2024). The Court need not rely on that alternative rationale. The signed memorandum and Jones's unsupported contrary assertion provide an independent, reasonable basis for rejecting both deficient performance and prejudice. Jones therefore has not shown that the Appellate Division unreasonably applied *Strickland* or *Lafler*. The Court will **DENY** Ground Seven.

### G. The Appellate Division Reasonably Rejected Jones's Failure-to-Investigate Claim (Ground Eight)

In Ground Eight, Jones asserts that he was denied his constitutional right to present a defense because trial counsel failed to investigate his alibi—that he was Christmas shopping in New York with his cousin, Sherell Pointer, on the night of the murder—and failed to call Clive Haughton, a man Jones identified as the victim's actual boyfriend and a potential alternative perpetrator. Pet. at 27–28. Respondents contend that both theories are unsupported by the record and unavailing under *Strickland*. Answer at 46–49.

A criminal defendant has a constitutional right to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Where that right is alleged to have been violated through counsel's failure to investigate, it is governed by *Strickland*'s two-prong ineffective assistance of counsel analysis. Counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. To establish prejudice, a petitioner must identify the specific evidence an adequate investigation would have revealed and also demonstrate a reasonable probability that such evidence would have changed the outcome. *Id.* at 694.

The PCR court denied both subclaims without an evidentiary hearing, and the Appellate Division affirmed. *Jones II* at 7–10. The Appellate Division noted that Jones's alibi allegations were not supported by the sworn submission required by New Jersey Court Rule 3:22-8. *Id.* at 7–8. Jones also submitted no certification from Pointer, and he acknowledged that his investigators could not locate her. *Id.* at 8. Against that absent proffer stood substantial evidence tying Jones to the crime, including a DNA profile beneath L.S.'s fingernails that was consistent with Jones, M.S.'s identification of "Papa," and Jones's admissions to family members. *Id.* The Appellate Division reasonably concluded that the unsupported alibi theory did not establish deficient performance or prejudice.

As to third-party guilt, the Appellate Division found that counsel had in fact presented that defense. *Jones II* at 9–10. Counsel cross-examined witnesses about Clive Haughton and argued in summation that, when L.S. said "my boyfriend stabbed me," she meant Haughton rather than Jones. *Id.* Calling Haughton, however, carried an evident risk. Haughton told police that L.S. could not speak with him or go to the laundromat because her "boyfriend"—who had assaulted her before—would not permit it. *Id.* at 10. That account could have reinforced the State's portrayal

of Jones as L.S.'s jealous and controlling boyfriend and undermined the effort to identify Haughton as the boyfriend referenced in the 9-1-1 call. The Appellate Division reasonably treated the decision not to call Haughton as trial strategy.

These conclusions were reasonable applications of *Strickland*. The alibi theory lacked any competent witness proffer, while the third-party-guilt theory was presented and counsel reasonably avoided testimony that could have damaged it. Jones has established neither deficient performance nor prejudice. The Court will **DENY** Ground Eight.

### H. The Appellate Division Reasonably Rejected Jones's Right-to-Testify Claim (Ground Nine)

In Ground Nine, Jones contends that trial counsel rendered ineffective assistance by failing to explain the advantages and disadvantages of testifying at trial and by dissuading him from exercising his right to testify, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. Pet. at 28. Respondents argue that the trial record conclusively refutes this claim. Answer at 49–52.

A criminal defendant has the constitutional right to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 51–53 (1987). Where a petitioner claims counsel prevented him from exercising that right, the claim is evaluated under *Strickland*'s two-prong framework. *Strickland*, 466 U.S. at 687.

The record conclusively forecloses Jones's claim. Before the defense rested, defense counsel conducted an on-the-record colloquy with Jones under oath:

> [DEFENSE COUNSEL]: Raheem, you and I have discussed this case and the evidence in this case, correct?
>
> MR. JONES: Yes.
>
> [DEFENSE COUNSEL]: And Ms. Daddio has discussed the evidence with you as well, right?

MR. JONES: Yes.

[DEFENSE COUNSEL]: And the both of us have discussed your potential testimony in this case with you, is that correct?

MR. JONES: Yes.

[DEFENSE COUNSEL]: And we have discussed that not only here in the courthouse, but also at the Passaic County Jail, is that right?

MR. JONES: Yes.

[DEFENSE COUNSEL]: And you understand the pros and the cons of not testifying or of testifying in this case, right?

MR. JONES: Yes.

[DEFENSE COUNSEL]: Now, I have explained to you that you are in control of the decision to testify, right?

MR. JONES: Yes.

[DEFENSE COUNSEL]: I have told you that I cannot make you testify in this case, right?

MR. JONES: Yes.

[DEFENSE COUNSEL]: And you also understand that if you choose to testify and I disagree with that, I cannot stop you from testifying, right?

MR. JONES: Yes.

[DEFENSE COUNSEL]: Have you had enough time to think about whether or not you want to testify in this case?

MR. JONES: Yes, I did.

[DEFENSE COUNSEL]: And have you made a decision about whether or not you want to testify?

MR. JONES: Yes, I did.

[DEFENSE COUNSEL]: What do you want to do?

MR. JONES: My decision is I don't.

> [DEFENSE COUNSEL]: You want to remain silent, right?
>
> MR. JONES: Yes.

D.E. 9-31, Ex. 29 ("Oct. 6, 2015 Trial Tr.") at 106:14–108:4.

The PCR court found that Jones knowingly and voluntarily waived his right to testify. PCR Hrg. Tr. at 54:16–55:17. The Appellate Division agreed that the trial record belied Jones's claim that counsel had dissuaded him from testifying without explanation and established a knowing and voluntary waiver. *Jones II* at 9.

Jones's later assertion that counsel dissuaded him from testifying is directly contradicted by this sworn colloquy. The record establishes that counsel discussed the decision with Jones, explained that the choice belonged to him, and confirmed that Jones understood the advantages and disadvantages before he elected not to testify. The Appellate Division therefore reasonably applied *Strickland* in finding neither deficient performance nor prejudice. *See Jones II* at 9. The Court will **DENY** Ground Nine.

### I. Ground Eleven Does Not Warrant Habeas Relief

In Ground Eleven, Jones argues that the trial court failed to comply with New Jersey Court Rule 3:9-1(f) by not advising him at the pretrial conference of the State's final offer and his maximum sentencing exposure, and that this failure violated due process. Pet. at 29–30. Respondents contend that the claim is procedurally defaulted and noncognizable. Answer at 53–56.

To the extent Ground Eleven alleges only a violation of New Jersey's court rules, it is not cognizable under § 2254. Federal habeas relief does not lie for errors of state law. *Estelle*, 502 U.S. at 67–68.

To the extent Jones asserts an independent federal due process claim based on lack of notice, the claim fails on the record. As discussed in Ground Seven, the signed pretrial memorandum set out both the forty-five-year NERA offer and Jones's maximum exposure to life imprisonment subject to NERA. *Jones II* at 5–7. The record therefore defeats the factual premise that Jones lacked notice of the offer or sentencing consequences. The Court will **DISMISS** the state law component of Ground Eleven and **DENY** the federal due process component.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability because "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a claim is denied on the merits, the petitioner must show that reasonable jurists could debate the Court's assessment; when a claim is dismissed on procedural grounds, he must show that jurists could debate both the procedural ruling and whether the petition states a valid constitutional claim. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Jones has made neither showing. Reasonable jurists would not debate the Court's merits rulings or its conclusions that the remaining components are moot or noncognizable. The Court will **DENY** a certificate of appealability.

## V. CONCLUSION

For the reasons stated above, the Court will **DENY** Grounds One through Three and Five through Ten. As to Ground Four, the Court will **DISMISS** as **MOOT** Jones's challenge to the former extended-term sentence and **DENY** his Eighth Amendment challenge to the sentence imposed on remand. As to Ground Eleven, the Court will **DISMISS** the state law component as noncognizable and **DENY** the federal due process component. The Court will **DENY** a certificate of appealability. An appropriate Order follows.

Date: August 24, 2026

Evelyn Padin, U.S.D.J.